UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                   Case No. 18-CR-208

JOHN MILLER RAGLAND,

                Defendant.

---

## GOVERNMENT'S SENTENCING MEMORANDUM

---

The Court is scheduled to sentence John Miller Ragland on December 18, 2019. In anticipation of that sentencing, the government submits the following sentencing memorandum.

*Background.*

Mr. Ragland was initially charged by indictment with four counts of tax evasion, in violation of Title 26, United States Code, Section 7201. R.1.[1] These charges were based on Mr. Ragland's efforts to evade federal income taxes he owed for the years 2010-2013. *Id.* On June 11, 2019, and pursuant to a written plea agreement, Mr. Ragland appeared before the Honorable Pamela Pepper, Chief U.S. District Judge, and pleaded guilty to the offense charged in count 3 of the indictment but acknowledged his responsibility for the overall conduct charged in the indictment, as well as for the tax years 2007-2009. R. 25 and 27. The case was subsequently transferred to this Court for sentencing.

Based on his guilty plea, Mr. Ragland faces a maximum possible penalty of up to 5 years in prison and a fine of up to $250,000, up to 3 years of supervised release and a mandatory special

---

[1] In this memorandum, "R." refers to an entry on the district court docket sheet; and "PSR" followed by a number refers to a paragraph of the revised Presentence Investigation Report filed on December 11, 2019. R. 29.

assessment of $100. Plea Agreement, ¶ 6. Mr. Ragland has also agreed, pursuant to 18 U.S.C.§ 3663(a)(3), to pay restitution to the Internal Revenue Service for the taxes he underreported and underpaid for the years 2007-2013, plus statutory interest applicable to those unpaid taxes. Plea Agreement, ¶ 27.

In this regard, the taxes Mr. Ragland attempted to evade for the years 2007-2013 total $1,060,843. Plea Agreement, ¶ 28. The total interest applicable to those unpaid taxes calculated as of November 20, 2019, is $369,613.78. This results in an overall restitution figure of $1,430,456.78. PSR, ¶ 90. Since the time of the entry of his guilty plea, Mr. Ragland has made payments to the IRS totaling $1,429,563.94. The government is requesting that the court enter an order reflecting a restitution amount of $1,430,456.78 but also reflecting that Mr. Ragland has paid $1,429,563.94, or all but $892.84.

As part of the plea agreement, the government has agreed to recommend a sentence no greater than the bottom of the applicable sentencing guideline range, as determined by the Court. Plea Agreement, ¶ 21.

*Sentencing Guidelines.*

Consistent with the parties' recommendations in the plea agreement, the revised presentence investigation report ("PSR") recommends a Total Offense Level of 19, which in combination with Mr. Ragland's Criminal History Category of I, provides for an advisory guideline imprisonment range of 30-37 months. PSR, ¶¶ 40, 45 and 81.

*Sentencing Recommendation.*

Title 18, United States Code, § 3553(a) directs the Court to impose a sentence that is sufficient to achieve the goals of sentencing without being excessive. Those goals focus on the need for the sentence to address the following considerations:

- Reflect the seriousness of the offense of conviction

- Promote respect for the law

- Provide just punishment for the offense

- Afford adequate deterrence to criminal conduct

- Protect the public from further crimes of the defendant

- Provide the defendant with needed educational training, medical care or correctional treatment in the most effective manner

18 U.S.C. § 3553(a)(2).

Section 3553(a) further directs the Court to consider the nature and circumstances of the offense of conviction and the history and characteristics of the defendant when determining the particular sentence. 18 U.S.C. § 3553(a).

*Nature and Circumstances of the Offense.*

As detailed in the PSR and the recitation of facts accompanying Mr. Ragland's plea agreement, Mr. Ragland's criminal conduct involved extensive efforts by Mr. Ragland to conceal more than $3.1 million he earned as commissions from a business based in China in order to evade more than $1 million in federal income taxes. PSR ¶¶ 22 and 23. To facilitate his fraud, Mr. Ragland opened accounts in Hong Kong that he failed to disclose on his tax returns and also failed to file reports with the IRS disclosing these accounts and the maximum balances in the accounts, as required by federal law. PSR ¶ 14. In fact, on the tax returns Mr. Ragland filed for the years 2009 and 2010 he expressly indicated he did not have any such foreign bank accounts. PSR ¶ 13.

Moreover, when confronted by federal agents in March 2015, Mr. Ragland initially denied any wrongdoing and later provided a false explanation to explain his failure to report the income he had earned in Hong Kong. PSR ¶¶ 15-17.

3

Mr. Ragland claimed that he had received advice from a representative of HSBC to the effect that he did not have to report income he deposited to annuities at the bank until he later withdrew the funds. PSR ¶ 16. As part of its investigation, the IRS contacted representatives of HSBC who had dealt with Ragland. These representatives consistently indicated that they did not and would not have provided such advice to Mr. Ragland and would simply have told him to consult with his own financial advisors. PSR ¶ 21. Mr. Ragland's claim also does not explain why he failed to report the more than $1.5 million he earned during the years 2007-2013 that he did not deposit to annuities at HSBC and instead withdrew from his foreign bank accounts. PSR ¶ 24.

In fact, records obtained from HSBC reflect that Mr. Ragland frequently withdrew funds from his foreign bank accounts either in cash or in checks in an amount less than $10,000. These checks were frequently deposited to Mr. Ragland's accounts in the United States but not reported as income on his tax returns. Mr. Ragland also used $230,000 from his foreign bank accounts to purchase his home in Florida and another $31,000 to buy a new vehicle. PSR ¶ 24. Again, none of these funds were reported by Mr. Ragland. *Id.*

According to one of Mr. Ragland's business partners, Mr. Ragland claimed that he reported only a small amount of income "to make it look good." PSR ¶ 12.

As evidenced from the foregoing, Mr. Ragland's offense is extremely serious. It not only involves essentially a theft of more than $1 million from the U.S. Treasury and, indirectly, all taxpayers who pay their taxes, it undermines the public's confidence in the tax system. This is particularly significant because the U.S. tax system must rely upon voluntary compliance in order to operate. Individuals such as Mr. Ragland, who attempt to cheat the system, encourage others to attempt the same fraud.

Given the nature of Mr. Ragland's offense, a non-violent offense involving calculated and repeated thefts over a lengthy period of time, the most pertinent goals of sentencing here are providing appropriate punishment for Mr. Ragland's criminal conduct, to reflect the seriousness of his criminal conduct, promoting respect for the law, and deterring others from committing similar crimes. Mr. Ragland's offense was not a crime of need or desperation nor an isolated lapse in judgment. His crime was motivated solely by greed and an unwillingness to pay his fair share despite receiving all of the benefits living in the United States offers.

*History and Characteristics of the Defendant.*

Mr. Ragland has a number of positive personal characteristics. He has no known criminal record; in fact no prior contact with the criminal justice system. PSR ¶¶ 42-49. He is intelligent and well educated having earned a master's degree in physics. PSR ¶¶ 67-69. He has been consistently employed throughout his life, sometimes operating multiple businesses at one time and earning an annual salary of more than $600,000; although the tax returns he filed during these years reported a fraction of this income. PSR ¶¶ 71-76, 22 and 23.

Mr. Ragland reports a close, supportive family and a seemingly idyllic upbringing. PSR ¶¶ 50-52. He reports no history of abuse, neglect, trauma, or exposure to substance abuse in his family. PSR, ¶ 52. He has been married for more than 50 years and raised four children, one of whom he continues to support. PSR ¶¶ 53 and 54.

Mr. Ragland's statement regarding the offense, however, is somewhat concerning. In a brief written statement accompanying the PSR, Mr. Ragland states that he now realizes what he did was wrong and that he "did not managing his business affairs properly and allowed willful negligence to take me down the road of tax evasion." PSR, ¶ 29.

5

As described above and in the PSR, Mr. Ragland's conduct was not negligent or a failure of proper bookkeeping, it was calculated and intentional. He set up foreign bank accounts in Hong Kong, which he failed to disclose to the IRS, and used these accounts to conceal more than $3 million of foreign income. Mr. Ragland apparently deposited $1.1 million into foreign annuities and covertly transferred the balance to other accounts or used it to pay personal expenses; all the while not reporting the income on his federal tax returns.

When questioned by the IRS, Mr. Ragland provided a false explanation for his actions and continues to excuse his actions as negligent. One does not conceal more than $3 million in income and evade more than $1 million in taxes by accident or poor planning.

The amount of unreported income and unpaid taxes, which exceed $1,000,000, is among the highest tax losses associated with tax cases prosecuted in this district. Plainly, his age is not a mitigating factor. Mr. Ragland began his criminal conduct in 2007, when was he was 60 years old, and continued violating the law uninterrupted until at least 2014, when he filed his false 2013 tax return. Mr. Ragland, who is well-educated and successfully employed, was motivated solely by greed.

Moreover, given the calculated nature of Mr. Ragland's crime, deterrence is particularly important. Mr. Ragland's punishment cannot just be that he has to pay his unpaid taxes. Merely requiring tax cheats to pay their unpaid taxes would encourage individuals to similarly cheat knowing that if they are caught all they will have to do is repay the money. Even the imposition of interest is no discouragement. Mr. Ragland, for example, evaded more than $1 million during the years 2007-2013 and had the use of that money for 6 to 12 years until he finally repaid it in 2019. The payment of interest simply reflects the time value of money and not a penalty.

*Conclusion*

Given the serious nature of Mr. Ragland's offense, the need to promote respect for the law and appropriately punish ongoing and complex financial crimes, which are particularly difficult to detect and investigate, and especially the importance of deterring others who might be similarly tempted to cheat the IRS and not pay their taxes, a sentence of meaningful imprisonment is required. Mr. Ragland is an individual who had all of the advantages and opportunities our society offers its residents. He chose to repay society for these advantages and opportunities by cheating the tax system and relying on others to pay his share of the cost. The government, therefore, requests that the Court impose a sentence of 24 months' imprisonment to adequately punish Mr. Ragland for his conduct and to deter others, who might otherwise be willing to risk getting caught, from committing similar offenses.

Respectfully submitted this 11th day of December, 2019.

        MATTHEW D. KRUEGER
        United States Attorney

By:   /s *Matthew L. Jacobs*
      MATTHEW L. JACOBS
      Assistant United States Attorney
      WI Bar No.: 1017227
      Attorney for Plaintiff
      Office of the United States Attorney
      Eastern District of Wisconsin
      517 E. Wisconsin Ave. Suite 530
      Milwaukee, Wisconsin 53202
      Tel: (414) 297-4106
      Fax: (414) 297-1738
      Email: Matthew.Jacobs2@usdoj.gov